UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

ROBERT SHORTER,

    Plaintiff,

v.                                                       Case No. 1:17-cv-00659-WCG-TAB

COREY CONLON and
MICHAEL CAYLOR,

    Defendants.

---

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Robert Shorter, who is currently representing himself, filed this action under 42 U.S.C. § 1983, alleging that Defendants Corey Conlon and Michael Caylor violated his constitutional rights. Currently before the court is the defendants' motion for summary judgment. For the following reasons, the motion will be granted and the case dismissed.

### BACKGROUND

At all times relevant to this action, Shorter was an inmate at the Pendleton Correctional Facility located in Pendleton, Indiana and housed in the Department-Wide Restricted Housing Unit in G Cellhouse. Shorter had a double cuff order that allowed him to be placed in double cuffs to reduce strain on his right shoulder. On September 30, 2016, Conlon received an order to perform a shakedown of Department-Wide Restricted Housing. Pursuant to Pendleton Correctional Facility Operation Policy 02-03-010 (the Shakedown Policy), inmates should be cuffed with mechanical restraints then placed in the shower area while a cell shakedown occurs. Once the shakedown is

complete, officers return the inmates to their cells while still cuffed. The restraints are finally removed once the inmate is secured in his cell. ECF No. 39-4.

During the September 30, 2016 shakedown, inmates located in the C-Block of G-Cell house were placed in restraints behind their backs in accordance with the Shakedown Policy. Before removing him from his cell, officers restrained Shorter with zip ties then escorted him to the shower area where he would remain during the shakedown. Shorter alleges that offenders were left in restraints while in the shower during the shakedown. An hour into the shakedown, Shorter told Caylor that his restraints were too tight and that he felt pain in his right shoulder. Caylor responded that he would not be in the shower for much longer. Shorter then informed Conlon that his restraints were too tight and that he believed leaving inmates in restraints violated department policy. Conlon advised Shorter to file a grievance if he was unhappy. Shorter remained in restraints for three hours during the duration of the shakedown. Once the shakedown concluded, officers escorted Shorter back to his cell and removed the restraints. Shorter then submitted a request for health care later that day.

A nurse examined Shorter on October 10, 2016. Prior to this examination, Shorter did not take any pain medication and only iced his shoulder. He also participated in volunteer work detail and picked trash up around the facility. The nurse advised Shorter that he suffered from a pulled or strained muscle and recommended that he apply heat and use a sling. She also gave him Tylenol for the pain. Shorter completed a second healthcare request on January 30, 2017. He stated that while the pain was not as bad as it had been, he continued to feel a hot/sharp pain down his right side. A doctor examined Shorter on February 7, 2017 and prescribed Tizanidine, a muscle relaxer, for 30 days. Shorter attended an appointment with a physician on March 21, 2017, for chronic care. At

this appointment, Shorter requested a renewal of the muscle relaxers, but the physician denied this request. Instead, the physician directed Shorter to stretch his shoulder and use over-the-counter pain relievers as necessary. Shorter claims he takes Aleve approximately twice a week for his back and shoulder.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must review the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Shorter contends that the defendants violated the Eighth Amendment when they used zip ties to restrain his hands behind his back for three hours during a shakedown. The Eighth Amendment's cruel and unusual punishments clause "prohibits the 'unnecessary and wanton infliction of pain' on

3

prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). But not every "malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson*, 503 U.S. at 9. "The use of *de minimis* force, so long as it 'is not a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). When the force is more than *de minimis*, however, the primary inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6. In answering this question, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials responsible on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Shorter has failed to demonstrate that the use of zip ties to restrain him was unnecessary or excessive. There is no evidence that the defendants acted maliciously or sadistically in keeping Shorter in restraints for three hours during the shakedown. Shorter does not dispute that the defendants were not involved in placing him in restraints, and the defendants contend they were required to leave Shorter in restraints during the shakedown, despite his complaints, in accordance with the Shakedown Policy. Under the policy, inmates must be placed in mechanical restraints before leaving their cells for a shakedown. After the inmate is restrained, officers escort the inmate to the shower area, where the inmate is secured during the shakedown. Once the shakedown is complete, the inmate is returned to his cell and the restraints are removed.

4

Shorter contends that there is no penological interest in leaving him in handcuffs for the duration of the shakedown once he was secured in the shower area because he did not pose a threat to anyone. But courts routinely extend deference to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). This deference extends to "a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventative measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.* at 322. Restraining inmates during shakedowns is rationally related to the institution's need to preserve internal order and maintain institutional security. *See Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (holding that the fact that inmates were handcuffed behind their backs for eight to nine hours during a shakedown did not constitute excessive force); *Howery v. Harrington*, No. 13-cv-00896-MJR, 2014 WL 7403446, at *4 (S.D. Ill. Dec. 29, 2014) (allegations that plaintiff was in restraints for as long as three hours failed to state an excessive force claim). Accordingly, if "an inmate has not shown anything more than a de minimis injury from the handcuffs, courts (or juries) should not second-guess a prison official's motives" for applying them. *Verser v. Smith*, No. 14C1187, 2017 WL 528381, at *7 (N.D. Ill. Feb. 9, 2017); *see Outlaw*, 259 F.3d at 839 (recognizing that a *de minimis* injury "strongly suggests that the force applied . . . was *de minimis*").

In this case, the record does not support an inference that the restraints caused more than a *de minimis* injury. More importantly, there is no evidence that the force used was applied "maliciously and sadistically for the very purpose of causing harm," *Hudson*, 503 U.S. at 6, rather

5

than in "a good faith effort to maintain or restore discipline." *Id.* (internal quotation marks omitted). Shorter reported that his right shoulder hurt, and a nurse diagnosed him with a shoulder strain or pull. She recommended he use heat and use a sling. Even though he took muscle relaxers for one month, he was advised to only take Aleve for his occasional back and shoulder pain. The *de minimis* nature of Shorter's injuries combined with the lack of evidence that the defendants maliciously or sadistically intended to cause him harm, fail to establish that the defendants violated Shorter's Eighth Amendment rights. Accordingly, the defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, the defendants' motion for summary judgment (ECF No. 39) is **GRANTED**. The Clerk is directed to enter judgment dismissing this case with prejudice.

**SO ORDERED** this  27th  day of November, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge[*]<br>
United States District Court - WIED

---

[*] Of the Eastern District of Wisconsin, sitting by designation.